IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL LEMELLE,

        Petitioner,             No. CIV-S-02-1491 LKK KJM P

   vs.

CHERYL PLILER,

        Respondent.        <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He challenges his Solano County convictions for robbery and assault with a semiautomatic firearm, and his admissions that he personally used a firearm, inflicted great bodily injury, and had suffered a prior conviction.  The state Court of Appeal for the First Appellate District rejected petitioner's substantive claims but reduced his sentence from thirty-five to thirty years.

        In this court, petitioner raises the following challenges: his Sixth Amendment right to conflict-free counsel was denied when the trial court denied his motion to substitute counsel and counsel's motion to withdraw; the warrantless search of the house where petitioner was staying violated his Fourth Amendment rights; petitioner's prior convictions are not valid because his pleas were not preceded by adequate advisements under <u>Boykin v. Alabama</u>, 395

1

1  U.S. 238 (1969); and appellate counsel was ineffective for not exhausting the Fourth Amendment

2  issue in the California Supreme Court.  Petition (Pet.) at 5a-5d.

3  I. Background

4             Petitioner was charged with robbery and assault with a semi-automatic firearm

5  and was alleged to have used a firearm and inflicted great bodily injury.  He also was alleged to

6  have suffered several prior "strikes."  CT 14-17.[1]

7             Petitioner filed a motion in pro per, asking to have counsel relieved.   CT 124-

8  131.  The court denied the motion.  7/2/98 RT 11.  At a later hearing, trial counsel sought to

9  withdraw as counsel for petitioner.  10/7/98 RT 2-3.  The court denied this motion as well.

10 10/7/98 RT 10.  Petitioner ultimately entered a no contest plea, preserving his right to appeal

11 several issues.  11/13/98 RT 7; CT 241-243.   Before sentencing, petitioner unsuccessfully sought

12 to withdraw his plea.  CT 256-278; 4/16/99 RT 3.

13            The state Court of Appeal summarized the facts of the offense as reflected in the

14 transcript of the preliminary hearing:

15            [O]n the evening of June 2, 1997, defendant entered a Vallejo
              convenience store, ordered the clerk to give him the contents of the
16            cash register, and in the course of a struggle, shot the clerk in both
              legs.  Defendant fled with the stolen funds and was discovered by
17            police shortly thereafter in a house near the crime scene located at
              56 Chesley Court.  A search of the house revealed a loaded
18            semiautomatic handgun and crumpled currency inside a closet.

19 Answer, Ex. C at 1-2 (Court of Appeal Opinion).

20 II. AEDPA Standards

21            An application for a writ of habeas corpus by a person in custody under a

22 judgment of a state court can be granted only for violations of the Constitution or laws of the

23 United States.  28 U.S.C. § 2254(a).

24

25            [1]  CT refers to the Clerk's Transcript and RT to the Reporter's Transcript of the state
   record, lodged with this court.  The transcripts were lodged in a set of exhibits to the Answer on
26 November 7, 2002.

1    Federal habeas corpus relief is not available for any claim decided on the merits in

2    state court proceedings unless the state court's adjudication of the claim:

3        (1) resulted in a decision that was contrary to, or involved an
         unreasonable application of, clearly established federal law, as
4        determined by the Supreme Court of the United States; or

5        (2) resulted in a decision that was based on an unreasonable
         determination of the facts in light of the evidence presented in the
6        State court proceeding.

7    28 U.S.C. § 2254(d).

8    Although "AEDPA does not require a federal habeas court to adopt any one

9    methodology," Lockyer v. Andrade, 538 U.S 63, 71 (2003), there are certain principles that guide

10   its application.

11   First, the "contrary to" and "unreasonable application" clauses are different.  As

12   the Supreme Court has explained:

13       A federal habeas court may issue the writ under the "contrary to"
         clause if the state court applies a rule different from the governing
14       law set forth in our cases, or if it decides a case differently than we
         have done on a set of materially indistinguishable facts.  The court
15       may grant relief under the "unreasonable application" clause if the
         state court correctly identifies the governing legal principle from
16       our decisions but unreasonably applies it to the facts of the
         particular case.  The focus of the latter inquiry is on whether the
17       state court's application of clearly established federal law is
         objectively unreasonable, and we stressed in Williams [v. Taylor,
18       529 U.S. 362 (2000)] that an unreasonable application is different
         from an incorrect one.
19

20   Bell v. Cone, 535 U.S. 685, 694 (2002).  It is the habeas petitioner's burden to show the state

21   court's decision was either contrary to or an unreasonable application of federal law.  Woodford

22   v. Visciotti, 537 U.S. 19, 25 (2002).  It is appropriate to look to lower court decisions to

23   determine what law has been "clearly established" by the Supreme Court and the reasonableness

24   of a particular application of that law.  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.

25   2000).

26   /////

3

1    Second, so long as the state court adjudicated petitioner's claims on the merits, its

2 decision no matter how brief, is entitled to deference. Lockyer, 538 U.S. at 76; Downs v. Hoyt,

3 232 F.3d 1031, 1035 (9th Cir. 2000).  A court's "postcard" denial is a decision on the merits.

4 Gaston v. Palmer, 387 F.3d 1004, 1013 (9th Cir. 2004).  However, when the state court does not

5 issue a "reasoned opinion," this court must undertake an independent review of the claims.

6 Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

7    Third, in determining whether a state court decision is entitled to deference, it is

8 not necessary for the state court to cite or even be aware of the controlling federal authorities "so

9 long as neither the reasoning nor the result of the state-court decision contradicts them." Early v.

10 Packer, 537 U.S. 3, 8 (2002).  Moreover, a state court opinion need not contain "a formulary

11 statement" of federal law, so long as the fair import of its conclusion is consonant with federal

12 law. Id.

13 III.  Sixth Amendment Right To Counsel[2]

14    A.  Background

15    Petitioner filed an "Ex Parte . . .Motion For Substitution Of Counsel," alleging

16 that trial counsel Carl Spieckerman had refused to meet and/or communicate with him, refused to

17 hire expert witnesses, and failed to prepare motions critical to the defense.  CT 124-130.

18    At the hearing on July 2, 1998, petitioner complained that Spieckerman seemed to

19 be "extremely busy," would "vaguely answer" petitioner's questions, hung up on petitioner on

20 several occasions, and had not visited or written to explain why he had not filed motions

21 petitioner requested.  7/2/98 RT at 5.  Petitioner also had learned that Spieckerman had not

22 handled the cases of other defendants to those defendants' satisfaction.  He also was bothered

23 because Spieckerman would not "look me in my eyes when he talks to me."  7/2/98 RT 6.

24 /////

25

26    [2]  The undersigned considered holding, and ultimately determined not to hold, an
evidentiary hearing on this claim.  See Order filed July 19, 2005.

4

1    Spieckerman acknowledged that he had hung up on petitioner once, when

2    petitioner had reached him on his cell phone while he was on the freeway, but did not recall any

3    other occasions.  7/2/98 RT 9.  He explained he had not pursued things petitioner asked him to

4    because, in his professional opinion, they were without merit.  7/2/98 RT 8.  He said he had

5    "looked into" the issue of gunshot residue, but would not be retaining an expert and that he had

6    not considered, but had not ruled out, using an expert on eyewitness identification.  7/2/98 RT

7    10.

8    The trial court denied petitioner's motion, noting that the disagreement as to

9    tactics and potential personality conflict was not a sufficient basis for removing Spieckerman,

10   who "has a good reputation . . . and always does a competent job."  7/2/98 RT 11.

11   The matter was revisited on October 7, 1998, when Spieckerman told the court:

12   "I don't believe that I can ethically represent Mr.  Lemelle . . . ."  10/7/98 RT 2.   He continued:

13           Mr.  Lemelle has certain constitutional rights that he can exercise
             and then I have certain ethical obligations, and those I believe have
14           come in conflict.  And I do not believe that I can adequately and
             properly represent Mr.  Lemelle when those – with those conflicts.
15           My ethical situation is simply that communications have broken
             down to such an extent that I don't believe that  – and that's one of
16           the reasons I made the 1368.[3]  I don't know if it's because Mr.
             Lemelle doesn't have the ability to really cooperate with counsel or
17           if it's just his own personal situation.  But, whatever it is, the
             conflict has risen to the level that I just don't believe I can ethically
18           represent him.

19   10/7/98 RT 6.  He added:

20           This is also the first time in 25 years that I have ever come to the
             conclusion that I really can't represent someone, and I certainly
21           don't take it lightly.

22           As to the specifics, um, I think that it really comes down to I have
             built up a personal dislike for Mr.  Lemelle, and as I said, that may
23           be based on things that he can't help. . . .  But the fact that I feel
             that I spent a lot of time putting this case together, breaking it
24           down into it's [sic] various component parts and trying to attack

25   _____

26       [3]  This is a reference to California Penal Code section 1368, which governs requests to
     determine a defendant's competence to stand trial.

1      each one of those.  And part of that has to do with trying to
       humanize Mr.  Lemelle in front of a jury . . . , and I'm not going to
2      be able to do that with the problems that Mr.  Lemelle has put in
       front of me.

3
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I can't
4      put on some of the stuff that I think Mr.  Lemelle would like to
       have put on.

5

6   10/7/98 RT 7-8.

7          He concluded:

8          It's when we do talk, it rapidly deteriorates into personal attacks
           and threats, and although I feel that number 1, I can take care of
9          what I need to do in court, and the court has the power to control
           its courtroom–this is getting into things that I would rather not get
10         into . . .

11         We are not able to communicate and try to discuss anything in
           terms of his defense, and then when things are said that I would –
12         certain evidence to be presented that I don't think is appropriate.
           . . .

13

14  10/7/98 RT 9.   The court denied the motion.  10/7/98 RT 10.

15         B.  The Court of Appeal's Ruling

16             The Court of Appeal rejected petitioner's claim that denying Spieckerman's

17  motion to withdraw was error:

18         The determination whether to grant or deny an attorney's motion to
           withdraw as counsel lies within the discretion of the trial court and
19         will not be disturbed on appeal absent an abuse of discretion.  A
           motion to withdraw should be granted where the defendant
20         establishes that a disagreement with counsel resulted in a
           "complete breakdown in the attorney-client relationship that
21         jeopardized his right to a fair trial.

22         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

23         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

24         A defendant has a constitutional right to effective assistance of
           counsel.   Although a defendant has the right to an adequate and
25         competent defense, he does not have the right to present a defense
           of his own choosing, and tactical disagreements between a
26         defendant and his attorney do not alone constitute an

6

"irreconcilable conflict." [C]ounsel is captain of the ship and can make all but a few fundamental decisions for defendant.

The record establishes that communications between Spieckerman and defendant had broken down, there were tactical disagreements between them, Spieckerman had a personal dislike of defendant, and Spieckerman did not take lightly his decision to withdraw. However Spieckerman also made very clear that he could take care of what he needed to do in court and the court could control its courtroom. Although defendant highlights Spieckerman's statement that their communication rapidly deteriorated into personal attacks and threats, the record does not suggest that any such threats were directed at third persons, or caused Spieckerman to be concerned for his own safety or the safety of others. At most the record demonstrates a breakdown in communications, but does not establish that such breakdown was likely to preclude Spieckerman from providing defendant with an adequate and competent defense. No abuse of discretion is demonstrated.

Answer, Ex. C at 9-11 (internal quotations, citations omitted).

C. Analysis

In Morris v. Slappy, 461 U.S. 1, 13-14 (1983), the Supreme Court held that the Sixth Amendment guarantee of the right to counsel and to effective assistance of counsel does not include a right to "a 'meaningful relationship' between an accused and his counsel." Relying on Morris, the Ninth Circuit has realized that "not every conflict or disagreement between the defendant and counsel implicates Sixth Amendment rights." Schell v. Witek, 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc). The right to effective assistance may be compromised, however, if there is a "breakdown of a relationship between attorney and client from irreconcilable differences. . . ." United States v. Moore, 159 F.3d 1154, 1158 (9th Cir. 1998). The "[l]oss of confidence by the defendant in his counsel weighs heavily in the defendant's favor when he seeks to substitute counsel," unless the breakdown in the relationship flows from a defendant's own conduct. Hudson v. Rushen, 686 F.2d 826, 832 (9th Cir. 1982).

/////

/////

/////

7

1    As the Ninth Circuit has explained:

2               [T]he basic question is simply whether the conflict between Schell
                and his attorney prevented effective assistance of counsel. . . . It
3               may be the case, for example, that because the conflict was of
                Schell's own making, or arose over decisions that are committed to
4               the judgment of the attorney and not the client, in fact he actually
                received what the Sixth Amendment required in the case of an
5               indigent defendant . . . .

6    Schell, 218 F.3d at 1026; see also Romero v. Furlong, 215 F.3d 1107, 1114 (10th Cir. 2000) ("A

7    breakdown in communication warranting relief under the Sixth Amendment cannot be the result

8    of a defendant's unjustifiable reaction to the circumstances of his situation.").

9               The relationship between Spieckerman and petitioner certainly was acrimonious,

10   but the disputes arose over trial tactics, matters over which trial counsel had ultimate control.

11   See Henry v. Mississippi, 379 U.S. 443, 450-51 (1965); United States v. Teague, 953 F.2d 1525,

12   1531 (11th Cir. 1992).  Even so, "[i]mportant strategic and tactical decisions should be made

13   only after a lawyer consults with his client."  Government of Virgin Islands v. Weatherwax, 77

14   F.3d 1425, 1436 (3d Cir. 1996).   The Third Circuit explained:

15              The constitutional duty to consult regarding issues on which
                counsel has the last word requires only that counsel act reasonably
16              in light of the circumstances and what is likely to be accomplished
                by a consultation.
17

18   Id. at 1437.

19              The record in this case reflects that Spieckerman attempted to consult with

20   petitioner but was stymied when the conversations "deteriorate[d] into personal attacks and

21   threats."  10/7/98 RT 9.  It also reflects that Spieckerman had solicited petitioner's views, but

22   rejected those suggestions as unwise or unfeasible.  Petitioner's angry response to Spieckerman's

23   evaluation of the case appears to be the main cause of the breakdown in the attorney-client

24   relationship.   Accordingly, Spieckerman's duty to consult was tempered by petitioner's reactions

25   and appears to have been undertaken reasonably under the circumstances.

26              Even with Spieckerman's dislike of petitioner, a feeling which appeared to be

8

1  mutual, the lawyer assured the court he had "spent a lot of time putting this case together" and

2  felt he could "take care of what I need to do in court."  10/7/98 RT 7, 9.  Thus, even though the

3  attorney-client relationship may not have been "meaningful," its breakdown stemmed from

4  petitioner's reaction to counsel's strategic choices.  And even with the strained nature of the

5  relationship, counsel negotiated a plea bargain sparing petitioner a "three strikes" life sentence

6  and securing for him a determinate term of years.  CT 241-243; 11/13/98 RT 6.

7          That Spieckerman couched his request to withdraw in terms of his ethical

8  obligations does not change the result; his ethical problem arose from the fact that

9  "communications have broken down."  10/7/98 RT 6; compare Nix v. Whiteside, 475 U.S. 157,

10  168-74 (1986) (counsel may withdraw if client says he will commit perjury on the witness stand).

11          On this record, then, the court cannot say petitioner's Sixth Amendment rights

12  were undercut by his disagreement with counsel or that the state courts unreasonably determined

13  the facts or applied the law.

14  IV.  Fourth Amendment

15          Petitioner argues the warrantless entry into the house at 56 Chesley Court was not

16  supported by probable cause nor justified by exigent circumstances.  He does not claim his ability

17  to challenge the search in state court was in any way truncated, only that the court reached the

18  wrong decision.

19          In Stone v. Powell, 428 U.S. 465, 494 (1976), the Supreme Court held "we

20  conclude that where the State has provided an opportunity for full and fair litigation of a Fourth

21  Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground

22  that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

23  Because petitioner had the opportunity in state court for full and fair litigation of his Fourth

24  Amendment claims, his attack on the state courts' resolution of those issues has been rendered

25  irrelevant by Stone.  Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990).

26  /////

9

1  V.  Invalid Prior Convictions

2          Petitioner argues that his sentence was enhanced by prior convictions that are

3  invalid under the authority of Boykin v. Alabama, 395 U.S. 238 (1969), and the court erred in

4  denying his motion to strike those convictions.

5          The Court of Appeal rejected the argument:

6          Even though defendant obtained a certificate of probable cause, his
           guilty plea in the present action precludes his challenge to the prior
7          convictions on appeal.  Pursuant to [California Penal Code] section
           1237.5, matters cognizable on appeal following a guilty or no
8          contest plea are limited to issues based on "reasonable
           constitutional, jurisdictional, or other grounds going to the legality
9          of the proceedings" resulting in the plea.  Defendant's challenge to
           the validity of his prior convictions is based on errors which
10         occurred in proceedings in 1989 and 1991.  Defendant does not
           assert errors in the instant proceeding which resulted in his no
11         contest plea.  Consequently, by pleading no contest he waived his
           right to assert the invalidity of the priors on appeal.  The fact that
12         he obtained a certificate of probable cause does not expand or
           make cognizable on appeal issues which have been waived by a
13         guilty plea.

14  Answer, Ex. C at 17.

15         The Supreme Court has held:

16          [A] guilty plea represents a break in the chain of events which has
            preceded it in the criminal process.  When a criminal defendant has
17          solemnly admitted in open court that he is in fact guilty of the
            offense with which he is charged, he may not thereafter raise
18          independent claims relating to the deprivation of constitutional
            rights that occurred prior to the entry of the guilty plea.

19

20  Tollett v. Henderson, 411 U.S. 258, 267 (1973).[4]  It has further explained:

21          . . . a counseled plea of guilty is an admission of factual guilt so
            reliable that, where voluntary and intelligent, it *quite validly*
22          removes the issue of factual guilt from the case.  In most cases,
            factual guilt is a sufficient basis for the State's imposition of
23          punishment.  A guilty plea, therefore, simply renders irrelevant
            those constitutional violations not logically inconsistent with the
24  /////

25  _____

26     [4]  A no contest plea has the same effect as a guilty plea.  Cal. Penal Code § 1016(3).

10

> valid establishment of factual guilt and which do not stand in the
> way of conviction, if factual guilt is validly established.

Haring v. Prosise, 462 U.S. 306, 321 (1983) (emphasis in original; citation omitted).

There are two exceptions to this general rule.  Claims that implicate "the very power of the State to bring the defendant into court to answer the charge brought against him" are cognizable in a habeas proceedings, as are those claims the state recognizes as surviving a guilty plea.  Blackledge v. Perry, 417 U.S. 21, 30 (1974); Lefkowitz v. Newsome, 420 U.S. 283, 289 (1975).  Claims that may be raised on collateral attack following a guilty plea include vindictive and possibly selective prosecution, a violation of the Double Jeopardy Clause, prosecution under an unconstitutional or unconstitutionally vague statute, and claims that implicate the "'very power of the State' to accept [a] guilty plea . . . ."  United States v. Garcia-Valenzuela, 232 F.3d 1003, 1006-07 (9th Cir. 2000).   Petitioner's attack on his prior convictions does not fall within these categories.  Moreover, this court is bound by the California Court of Appeal's interpretation of its own laws defining the kind of claims that survive a guilty plea.  Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993) (federal court bound by state's interpretation of its penal statutes);  Peltier v. Wright, 15 F.3d 860, 862 (9th Cir. 1994).

Moreover, even if the claim survived petitioner's no contest plea, it would nevertheless not be cognizable in a federal habeas petition.  In Lackawanna v. Coss, 532 U.S. 394 (2001), the United States Supreme Court held:

> [O]nce a state conviction is no longer open to direct or collateral
> attack in its own right because the defendant failed to pursue those
> remedies while they were available (or because the defendant did
> so unsuccessfully), the conviction may be regarded as conclusively
> valid. [Citation omitted].  If that conviction is later used to enhance
> a criminal sentence, the defendant generally may not challenge the
> enhanced sentence through a petition under § 2254 on the ground
> that the prior conviction was unconstitutionally obtained.

Id. at 403-04.  Under Lackawanna, petitioner may not challenge the validity of his prior guilty pleas in this action.

VI.  Ineffective Assistance Of Appellate Counsel

Petitioner argues appellate counsel was ineffective in failing to include his Fourth Amendment claim in the Petition for Review filed in the California Supreme Court.

In Ross v. Moffitt, 417 U.S. 600, 610 (1974), the Supreme Court held that a state was not obligated to provide a criminal defendant with counsel for his discretionary appeal to the North Carolina Supreme Court.  And in Wainwright v. Torna, 455 U.S. 586, 587-88 (1982), the court held that when there is no constitutional right to counsel, a defendant cannot be deprived of the effective assistance of counsel.

In California, review by the California Supreme Court is not a matter of right: it is within that court's discretion to select those cases that meet certain criteria.  Cal. Const. art. VI, §§ 11 (a), 12(b); Cal. Rules of Court, rule 28 (b).[5]  Accordingly, appellate counsel's omission does not implicate the Sixth Amendment right to counsel.  See also Jones v. Barnes, 463 U.S. 745, 751-54 (1983) (not ineffective assistance of counsel to "winnow[] out weaker arguments").

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned

/////

/////

/////

/////

/////

---

[5]  The grounds for review formerly were contained in rule 29 of the California Rules of Court.

1   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

2   shall be served and filed within ten days after service of the objections.  The parties are advised

3   that failure to file objections within the specified time may waive the right to appeal the District

4   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

5   DATED:  July 22, 2005.

6

7

8                               UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   2/leme1491.157

13